UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STOP LONGMEADOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 16-cv-5435 |
| | ) | |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*, | ) ) | Judge Coleman |
| | ) | |
| Defendants. | ) | |

**FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO STOP LONGMEADOW'S MOTION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**

**I.      INTRODUCTION**

This case involves the United States' decision to authorize the Longmeadow Parkway Bridge Corridor in Kane County, Illinois, and its evaluation of the associated environmental effects. The Longmeadow Parkway will cross the Fox River and run approximately 5.6 miles from Huntley Road on the western terminus to Illinois Route 62 on the eastern terminus. The project also includes several intersection improvements. The project will reduce congestion in Kane County and to increase access across the Fox River.

On April 15, 2017, proposed intervenor-plaintiffs, Stop Longmeadow, filed a motion for intervention and a proposed complaint and motion for temporary restraining order and preliminary injunction. ECF No. 73. Despite being fully aware of the Project well in advance of the filing of its motion, Stop Longmeadow waited until the eleventh-hour – indeed, past the eleventh hour, filing their complaint on a Saturday of a holiday weekend – to demand that this

Court enjoin activities set to begin on Monday, April 17, 2017. ECF No. 73, Exhibit B at 8.[1]

Stop Longmeadow has utterly failed to meet its burden of showing that it is entitled to this "extraordinary remedy." *See Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008). Among other reasons, an injunction is wholly unnecessary because Federal Defendants have yet to issue the requisite permits required before construction activity begins in Section B-2 or C, the location of the Brunner Family Forest Preserve, which is where Stop Longmeadow alleges the rusty-patched bumblebee, a species protected under the Endangered Species Act ("ESA"), may occur. Moreover, as a threshold jurisdictional matter, Stop Longmeadow cannot show any likelihood of success on the merits, because they have failed satisfy the jurisdictional mandate of providing the requisite notice prior to bringing suit under the ESA. Further, Stop Longmeadow cannot show that the harms alleged are actually imminent or that the balance of equities tips in its favor. Indeed, the public interest weighs against entering an injunction. For these reasons, the Court should deny Plaintiff's motion for a temporary restraining order and preliminary injunction and allow the Longmeadow Parkway project to proceed.

## II. STATUORY AND FACTUAL BACKGROUND

### A. Statutory Background

1. Endangered Species Act

Section 7(a)(2) of the ESA requires federal agencies to ensure that any action they authorize, fund, or carry out "is not likely to jeopardize the continued existence" of any species

---

[1] In light of Stop Longmeadow's belated filing, counsel for Federal Defendants submits this response in an effort to ensure that the Court hears from the government prior to issuing any ruling. However, should the Court be inclined to consider Stop Longmeadow's motion on this expedited timetable, the government respectfully requests the opportunity to submit more fulsome briefing after it is able to confer with the appropriate agency personnel who were not

- 2 -

listed under the Act or result in the "destruction or adverse modification" of any habitat for listed species that has been designated as critical. 16 U.S.C. § 1536(a)(2); see also id. § 1533(a). To ensure compliance with these substantive mandates, the ESA's implementing regulations outline a detailed procedure whereby federal agencies proposing to take an action (i.e., "action agencies") consult with the appropriate expert "consulting agency" (either the United States Fish and Wildlife Service or the National Marine Fisheries Service, or both, depending on the species involved) to, among other things, analyze the potential impacts of the proposed action on listed species and designated critical habitat. The first step in the consultation process is for the action agency to independently determine whether its proposed action "may affect" an endangered or threatened species or that species' critical habitat. 50 C.F.R. 402.14(a). If the action agency determines there is no effect on listed species or critical habitat, consultation is not required. Endangered Species Consultation Handbook, E-20 (March 1998), available at www.fws.gov/endangered/esa-library/pdf/esa_Section7_handbook.pdf (last visited April 16, 2017).

      Consultation is required only if the proposed action "may affect" a listed species or critical habitat. 50 C.F.R. § 402.14(a). There are two varieties of consultation: informal or formal. Informal consultation is an "optional process that includes all discussions, correspondence, etc." between the two agencies and is "designed to assist the Federal agency in determining whether formal consultation or a conference is required." 50 C.F.R. 402.13(a). "If during informal consultation it is determined by the [action agency], with the written concurrence of the [consulting agency], that the action is not likely to adversely affect listed species or critical

---

reachable over the weekend.

habitat, the consultation process is terminated, and no further action is necessary." Id. § 402.13(a), 402.14(b)(1).

If, however, the action is "likely to adversely affect" listed species or critical habitat, the agencies must engage in formal consultation. 50 C.F.R. §§ 402.13(a), 402.14(a)–(b). Formal consultation entails the consulting agency preparing a "biological opinion" stating whether the proposed action, "taken together with cumulative effects, is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat." *Conservation Cong. v. Finley*, 774 F.3d 611, 615 (9th Cir. 2014); quoting 50 C.F.R. § 402.14(g)(4). Formal consultation culminates in the issuance of a written biological opinion by the consulting agency that assesses the likelihood of "jeopardy" to the species and "destruction or adverse modification" of its critical habitat. 50 C.F.R. § 402.14(g). Section 11 of the ESA contains a citizen-suit provision which provides that "any person may commence a civil suit on his own behalf . . . against the Secretary[2] where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g). Such a suit can only be brought 60 days after written notice of the alleged violation is provided to the Secretary. *Id.* § 1540(g)(2)(c).

### B.     Factual Background

The Federal Highway Administration signed the Record of Decision for the Longmeadow Parkway in 2002. *See* Federal Defendants' Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Brief in Support, ECF No. 62 at 3. Kane County, however, did not begin building the Longmeadow Parkway immediately because it was not able to obtain

---

[2] The ESA defines "Secretary" as "the Secretary of the Interior or the Secretary of Commerce."

- 4 -

sufficient funding to build the project after the Federal Highway Administration signed the Record of Decision. *Id.* Most recently, the Kane County Department of Transportation provided the Reevaluation Environmental Assessment for public review in July 2016, held a public hearing in August 2016, and accepted comments into September 2016. *Id*. at 4; *see also* Errata to the July 2016 EA Reevaulation for Longmeadow Parkway ("Errata"), available at http://www.co.kane.il.us/dot/foxBridges/longmeadowPkwy.aspx (last visited April 16, 2017). Stop Longmeadow attended and participated in the public meeting. *See* Errata at 5, available at http://www.co.kane.il.us/dot/foxBridges/longmeadowPkwy.aspx (last visited April 16, 2017). On November 22, 2016, the Federal Highway Administration signed the Finding of No Significant Impact, agreeing that the Longmeadow Project will not result in any new significant impacts to the human environment. ECF No. 62 at 4. Right of way preparation and tree removal began in Section A2-B1 of the Project in February 2017. *See* February 8, 2017 Kane County Division of Transportation Press Release, Defendants' Exhibit 1 ("Def. Ex. 1"), available at http://www.co.kane.il.us/dot/foxBridges/longmeadowPkwy.aspx (last visited April 16, 2017). Starting the week of April 17, 2017, pavement removal and pavement widening work will begin on the existing Longmeadow Parkway in Project Section B-1. ECF No. 73 at 145-147.[3]

      Stop Longmeadow filed a motion to intervene, proposed complaint, and proposed motion for temporary restraining order and preliminary injunction on Saturday, April 15, 2017 (ECF No. 73), alleging that the rusty patched bumblebee (a species that was listed was proposed for listing under the ESA in September 2016 and actually listed on March 21, 2017), can be found on the

---

16 U.S.C. § 1532(15).
[3] Stop Longmeadow attached to their Motion to Intervene two documents labeled at "Exhibit 3." To avoid confusion, Federal Defendants will cite to those documents by the ECF document page

Brunner Family Forest Preserve. Pointing to an April 11, 2017 press release from the Kane County Division of Transportation (ECF No. 73 at 145-147), Stop Longmeadow asserts that work will begin in habitat for the rusty patched bumblebee on April 17, 2017. In actuality, no work is scheduled to begin in Section B-2 or C, where the Brunner Family Forest Preserve is located, until after September 2017.[4] *See* ECF No. 62-3 at 6. Federal Defendants have yet to authorize funding or an authorization to proceed for Sections B-2 and C, and Federal Defendants will not authorize funding until all applicable permits and certifications, described on Page 56 of the Reevaluation Environmental Assessment, have been acquired. *See* Declaration of Matt Fuller ("Fuller Decl.") (attached), at ¶ 2, 3. The motion for emergency injunction could be denied on this basis alone. More fundamentally, and fatally for their putative lawsuit, Stop Longmeadow did not provide Federal Defendants with notice of intent to sue, as required by the ESA, before filing their proposed complaint and motion for emergency injunctive relief.

### III. STANDARD FOR ISSUING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

A temporary restraining order, like a preliminary injunction, is an extraordinary remedy, and Plaintiff has the burden to prove by clear and convincing evidence that the remedy is appropriate. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 442–43 (1974). In *Winter v. NRDC*, the Supreme Court explained that "[a] plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." 555 U.S. at 20; *see also Munaf v.*

---

number.
[4] In addition, no tree removal may take place in any section of the Project from April 1 through

*Geren*, 553 U.S. 674, 690 (2008) ("a party seeking a preliminary injunction must demonstrate, among other things, a likelihood of success on the merits." (quotations omitted)); *Mazurek v. Armstrong*, 520 U.S. 968, 971, 976 (1997) (overturning a preliminary injunction issued when a plaintiff had established only a "'fair chance of success on the merits' of his claim"); *Michigan v. U.S. Army Corps of Eng'rs*, No. 10-3891, 2011 U.S. App. LEXIS 17714 (7th Cir. 2011).[5] In addition, to obtain a temporary restraining order, the applicant must show not only the traditional four preliminary injunction factors, but also must demonstrate clearly, with specific factual allegations, "that immediate and irreparable injury" will result absent a temporary restraining order. *Tolston-Allen v. City of Chicago*, Case 12 CV 7601, 2014 WL 1202742, *6 (N.D. Ill., March 21, 2104).

Supreme Court precedent recognizes that an injunction "is not a remedy which issues as of course," even in an environmental case. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). In balancing the relative hardships, courts do not presume that environmental harm should outweigh other harm to the public interest. *Winter*, 555 U.S at 33 (overturning a court of appeals for failing to weigh the public interest properly); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545–46 (1987) (holding that courts cannot presume environmental injury is irreparable).

### IV. ARGUMENT

#### A. Stop Longmeadow Has No Likelihood of Success on the Merits

---

September 30. *See* Reevaluation Environmental Assessment, ECF No. 73 at 66.
[5] Although the Seventh Circuit has identified a different standard in some cases, *e.g.*, *Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009), the standard in *Winter* controls.

Stop Longmeadow's proposed motion for a temporary restraining order and preliminary injunction seeks to enjoin activities related to the planning and construction of Longmeadow Parkway on the basis of Federal Defendants' alleged violations of Section 7 of the ESA. Stop Longmeadow cannot show that it is likely to succeed on the merits of its claim for two reasons. First, Stop Longmeadow has failed to provide the requisite 60-day notice to Federal Defendants, which is "mandatory condition [ ] precedent to commencing suit" under the ESA. *Alliance for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014); 16 U.S.C. § 1540(g)(2)(A). This court may not disregard the notice requirement, nor may Stop Longmeadow evade this jurisdictional prerequisite through artful pleading. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989); *Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515 (9th Cir. 1998). Second, even if Stop Longmeadow could bring its ESA claim, which it cannot, Stop Longmeadow's claim is not yet ripe for review. Federal Defendants have yet to issue the requisite authorization to proceed with construction for Sections B-2 or C (Fuller Decl. ¶ 2, 3), the location of the Brunner Family Forest Preserve where Stop Longmeadow claims that the rusty patched bumblebee may be found (*see* ECF No. 73 Exhibit A ¶ 51; ECF No. 73 Exhibit 2[6] ¶ 4). As Federal Defendants have not yet completed their decision making process, Stop Longmeadow's claims are premature.

    1.    <u>Stop Longmeadow Has Failed to Provide the Jurisdictionally-Required Notice of Intent to File Suit, and Cannot Evade This Requirement Through Artful Pleading.</u>

---

[6] Stop Longmeadow has offered the Declaration of Susanne Masi in support of their claims that the "bee is found in Kane County, in the fen of the Brunner Family Forest Preserve" and that that "harm, if demonstrated, would be irreparable." ECF No. 73 Exhibit 2 ¶ 4, 6. Federal Defendants' object to Ms. Masi's proffered testimony, as she has not been qualified as an expert in endangered invertebrates, or an expert on the rusty patched bumble bee. *See* Fed. R. Evid. 702.

Jurisdiction under the ESA citizen-suit provision is expressly limited by ESA Section 11(g)(2), which requires a would-be plaintiff to provide written notice of an alleged violations at least 60-days prior to filing a complaint. 16 U.S.C. § 1540(g)(2)(A) ("no action may be commenced . . . prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation"). "The notice requirement provides agencies with 'an opportunity to review their actions and take corrective measures if warranted.'" *Alliance*, 772 F.3d at 601 (quoting *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520). Plaintiff's failure to provide proper notice warrants dismissal. *See Hallstrom*, 493 U.S.at 31 (interpreting analogous 60-day notice requirement under the Resource Conservation and Recovery Act as a "mandatory condition precedent to commencing suit"); *see also, Tannenbaum v. Jamison*, No. 93 CV 3595, 1994 WL 247120, at 1 (N.D. Ill. June 6, 2014) (applying the reasoning in *Hallstrom* to a 60-day notice requirement under the Clean Water Act).

Stop Longmeadow does not allege that it sent any notice of intent to file suit, and in fact argues that it is was not required to do so. ECF No. 73 Exhibit A ¶ 47. Because Stop Longmeadow has failed to fulfill the jurisdictional prerequisite as required by the ESA, this Court lacks jurisdiction to hear Stop Longmeadow's claim. *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520. Thus, Stop Longmeadow cannot show that it is likely to succeed on the merits of its claim and the request for a temporary restraining order and preliminary injunction should be denied.

Perhaps mindful that it has not provided the mandatory notice prior to submitting its hastily-filed lawsuit, Stop Longmeadow has styled Claim III as alleging a violation of the Administrative Procedure Act ("APA") (ECF No. 73 Exhibit A ¶ 47) for a "failure to act." But,

in actuality, Stop Longmeadow is alleging failure by the Federal Defendants to satisfy the requirements of ESA Section 7(a)(2), 16 U.S.C. §1536(a)(2), to insure against jeopardy; such an action may only properly be brought under the ESA. *See Bennett v. Spear*, 520 U.S. 154, 172-714 (1997) (violation of section 7 on the part of an action agency is an ESA citizen suit for which 60-day notice is required).

The APA provides a limited opportunity for judicial review only when the challenge is to "final agency action *for which there is no other adequate remedy in court*." 5 U.S.C. § 704 (emphasis added). In other words, the APA's waiver of sovereign immunity is limited to actions where there is no other remedy available. Here, Stop Longmeadow alleges that Federal Defendants have violated the ESA, a statute which permits "any person" to commence an action "to enjoin any person, including the United States and any other governmental instrumentality or agency… who is alleged to be in violation of any provision of this Act" and a court may enforce such a provision. 16 U.S.C. § 1540(g)(1). Accordingly, the APA is not the appropriate avenue for Stop Longmeadow to pursue its claim, where a remedy is already available under the ESA. Indeed, by the text of the APA, it has no application here. 5 U.S.C. § 704; *see also*, *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (Congress did not intend for the APA to duplicate procedures for review of an agency action); *Allegheny Cty. Sanitary Auth. v. EPA*, 732 F.2d 1167, 1177 (3rd Cir. 1984) (finding that a similar citizen suit provision under the Clean Water Act precluded review of agency action under the APA).

2. Stop Longmeadow's ESA Claims Are Not Ripe.

Stop Longmeadow cannot show that it is likely to succeed on the merits of his claim because its ESA claim is not yet ripe. "A claim is not ripe for adjudication if it rests upon

contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations and citations omitted). To determine ripeness, a reviewing court is required to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149 (1967). The first consideration is the "more important" of the two. *National Park Hosp. Ass'n v. Dept. of Interior*, 538 U.S. 803, 814 (2003).

Stop Longmeadow purports to challenge actions which Stop Longmeadow claim could affect possible habitat for the rusty patched bumblebee, namely in the Brunner Family Forest Preserve. ECF No. 73 Exhibit A ¶ 47; ECF No. 73 Exhibit 2 ¶ 4. Yet the Brunner Family Forest Preserve is located in Sections B-2 and C, for which Federal Defendants have yet to authorize construction or funding. Fuller Decl. ¶ 2, 3. Thus, Federal Defendants have not yet completed their decisionmaking process and Stop Longmeadow's claims are premature. Because Stop Longmeadow has not shown it is likely to succeed on the merits, its motion for a temporary restraining order and preliminary injunction should be denied on this prong alone.

> B. **Stop Longmeadow Cannot Establish that It Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

For the same reasons that Stop Longmeadow's claims are not ripe, it cannot establish irreparable harm in the absence of an injunction. Federal Defendants have yet to issue the requisite approvals and permits for work in Sections B-2 and C, where Stop Longmeadow alleges that the bumblebee is present (*i.e.*, the Brunner Family Forest Preserve. ECF No. 73 Exhibit A ¶ 47; ECF No. 73 Exhibit 2 ¶ 4.). Fuller Decl. ¶ 2, 3. As set forth in the schedule attached to the Declaration of Carl Schoedel (ECF No. 62-3 at 6), a contract for construction activity in Sections B2 and C are not expected to be issued until September 2017, with no ground-disturbing activity

for occurring for this Project that requires federal approval until after that. Thus, Stop Longmeadow cannot meet its burden to demonstrate the likelihood of imminent irreparable injury to warrant an injunction. The Court could deny the motion for this reason as well.

In its memorandum, Stop Longmeadow blithely claims that its alleged injury is necessarily irreparable simply because this is an environmental case. (ECF No. 73, Exhibit B at 7). But courts cannot presume environmental injury is irreparable (*Amoco*, 480 U.S. at 545–46), and Stop Longmeadow must still meet its heavy burden of showing that it will suffer irreparable harm in the absence of preliminary relief. *See Winter*, 555 U.S. at 20. Stop Longmeadow alleges, without any factual support, that activities schedule to begin on April 17, 2017 would impact "one of the bee's last remaining habitats." ECF No. 73, Exhibit B at 7. But this is not the case. Stop Longmeadow alleges only that the bee is present in and around the Brunner Family Forest Preserve. ECF No. 73 Exhibit A ¶ 47; ECF No. 73 Exhibit 2 ¶ 4. But the Brunner Family Forest Preserve is located in Sections B-2 and C, and, work scheduled to begin on April 17, 2017 is located only in Section A-2/B-1. ECF 73 at 145-147. Stop Longmeadow does not provide any factual support for allegations that the bee is found in the portion of the Project for which work that it claims will commence on April 17, 2017. Moreover, the work set to commence on April 17, 2017 is pavement removal and widening of the existing roadway. *Id*.

Indeed, the harm Stop Longfellow complains of are not sufficiently immediate to justify the Court issuing an injunction. Ground-disturbing activity in Sections B-2 and C requires federal approval is not scheduled to take place until after September 2017. ECF No. 62-3 at 6. In the event that the Court is required to address the merits of this case, the parties will have sufficient time to brief the merits of the case and for the Court to decide the merits before any irreparable

construction activities begin. Because there is no imminent harm, Plaintiff is not entitled to preliminary relief.

Moreover, even if Stop Longmeadow could establish some irreparable harm without an adequate remedy at law, it has not shown the urgency that one would expect from a plaintiff concerned about imminent injuries from the project. Stop Longmeadow has a long history of involvement with this project, and most recently provided comments on the Project during a public hearing in August 2016. *See* Errata at 5, available at http://www.co.kane.il.us/dot/foxBridges/longmeadowPkwy.aspx (last visited April 16, 2017). Yet, Stop Longmeadow never provided an ESA notice letter (despite the fact that the species had long been proposed for listing), did not raise concerns about the bee through any other avenue, and did not seek temporary restraining order until the eleventh hour on Easter weekend. Stop Longmeadow's "long delay in seeking relief indicates that speedy action is not required," and fatally undermines its assertion that a temporary restraining order is necessary. *See Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 2001); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) ("Our conclusion that an injunction should not issue is bolstered by the delay of the appellants in seeking one."); *Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011). For this reason also, the Court should deny Stop Longmeadow's motion for a temporary restraining order and preliminary injunction.

### C. The Balance of Harms and the Public Interest Do Not Weigh in Favor of an Injunction

Finally, the Court "must . . . determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th

Cir. 2006). "[I]n exercising its sound discretion, the [C]ourt should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312 (1982); *see also Salazar v. Buono*, 559 U.S. 700, 714 (2010) ("A court should be particularly cautious when contemplating [injunctive] relief that implicates public interests."). In balancing the relative hardships, there is no presumption that environmental harm should outweigh other harm to the public interest. *Winter*, 555 U.S. 7, 20 (2008).

Here, Stop Longmeadow has submitted a bare-bones declaration from one individual asserting purported harm that she speculates may occur to the bee, but which are not borne out by the facts on the ground. As discussed above, Federal Defendants have not issued funding or authorized construction on the sections of the Project which contain the Brunner Family Forest Preserve, the location which Stop Longmeadow assert that the bee may possibly be found. The public will benefit from the Project through decreased traffic congestion, and increased access across the Fox River. ECF No. 73 at 39; *See also* ECF No. 62 at 12-13. Stop Longmeadow cannot simply invoke the Endangered Species Act in a last-ditch effort to halt this project. An injunction is unwarranted here.

## IV. CONCLUSION

Based on the foregoing, the Federal Defendants respectfully requests that the Court deny Plaintiff's motion for a temporary restraining order and preliminary injunction.

Respectfully submitted, this April 17, 2017.

          ZACHARY T. FARDON
          United States Attorney
          KURT N. LINDLAND
          Assistant United States Attorney

        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-4163
        Kurt.Lindland@usdoj.gov

        JEFFREY H. WOOD
        Acting Assistant Attorney General
        Environment & Natural Resources Division

        *s/ Emily M. Meeker*
        Emily M. Meeker
        United States Department of Justice
        Environment & Natural Resources
        Natural Resources Section
        601 D Street NW, Suite 3110
        Washington, DC 20004
        (202) 305-0422 (telephone)
        (202) 305-0506 (facsimile)
        Emily.Meeker@usdoj.gov

        *Attorneys for the United States*

*OF COUNSEL*

Julie Dingle
Senior Attorney
FHWA Mid-America Field Legal Services
4749 Lincoln Mall Dr., Suite 600
Matteson, IL  60443
(708) 283-3512