UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEOFFREY J. PETZEL, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 16 cv 5435 |
| KANE COUNTY DEPARTMENT OF TRANSPORTATION, *et al.*, | ) ) Judge Sharon Johnson Coleman ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Geoffrey J. Petzel filed a *pro se* First Amended Complaint against various federal, state, and county agencies and departments, alleging violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Department of Transportation Act of 1966, 49 U.S.C. § 1653 *et seq.*, and Land and Water Conservation Fund Act, 54 U.S.C. §§ 200301-200310. Petzel's claims arise from approval and facilitations of the Boltz Road/Longmeadow Parkway Bridge and Highway Project (the "Longmeadow Project"). Defendants have filed Motions to Dismiss [40, 43, 44, 47, 87] pursuant to Rule 12(b)(1), (b)(5), (b)(6) for untimeliness, ripeness, mootness, inadequate service of process, and failure to state a claim. For the reasons stated below, this Court grants the motions.

**Background**

Plaintiff, Geoffrey Petzel, is a land preservation advocate in Kane County and a resident of Lake County, Illinois. (Dkt. 34 at ¶ 11). Defendant Kane County Department of Transportation ("KDOT") has been the primary agency responsible for planning the Longmeadow Project. (*Id.* at ¶ 12.) Defendant Kane County Forest Preserve District ("Forest Preserve") is a primary landholder within the Longmeadow Project corridor and has approved a land transfer. (*Id.* at ¶ 14.) Defendant Dundee Township Park District ("Dundee") has transferred park land for the Longmeadow Project.

(*Id.* at ¶ 15.) Defendant Randall Blankenhorn is being sued in his official capacity as Secretary of the Illinois Department of Transportation ("IDOT"). (*Id.* at ¶ 16.) IDOT has provided financial support, planning, and approvals for the Longmeadow Project. (*Id.*) Defendant Wayne Rosenthal is being sued in his official capacity as Director of the Illinois Department of Natural Resources ("IDNR"). (*Id.* at ¶ 17.) IDNR is the assigned agency for review on behalf of the United States Department of Interior (the "Interior") for issues involving the Land and Water Conservation Act. (*Id.*) Defendant Federal Highway Administration ("Highway Administration") is a division of the United States Department of Transportation and has participated in planning and approvals for the Longmeadow Project. (*Id.* ¶ 18.) Defendant United States Department of Transportation ("USDOT") has participated in planning and approvals for the Longmeadow Project. (*Id.* ¶ 19.) Petzel is suing defendant Elaine L. Chao, Secretary of USDOT, and Ryan Zinke, Secretary of the Interior, in their official capacities.[1] (*Id.* ¶¶ 20, 21.) Defendant National Parks Service ("NPS") is a division of the Interior. (*Id.* ¶ 22.)

In 1991, Kane County, the State of Illinois, the Highway Administration, and USDOT began a study of the Longmeadow Project as authorized in the Intermodal Surface Transportation Efficiency Act of 1991. (*Id.* ¶ 47.) The purpose of this study was to plan and construct up to eight bridges across the Fox River between Route 61 in Algonquin, Illinois, and Route 47 in Yorkville, Illinois. (*Id.*) The Fox River Bridge Advisory Committee identified nine potential corridor crossings for the Fox River. (*Id.* ¶ 48.) Those nine potential crossings were advanced for study under NEPA. (*Id.* ¶ 52.) The Highway Administration determined that it could provide federal funding because a collective evaluation of this series of transportation improvements was necessary. (*Id.* ¶ 49.) The Fox

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Elaine L. Chao is substituted for Anthony Foxx as Secretary of the U.S. Department of Transportation and Ryan Zinke is substituted for Sally Jewell as Secretary of the U.S. Department of the Interior.

Bridge River Advisory Study advanced five bridge-crossing options for evaluation through the Environmental Impact Statement process. (*Id.* ¶ 53.) The study only examined roadway improvements. (*Id.* ¶ 54.) The Longmeadow Project corridor was the only option selected for study in the Northern Region. (*Id.* ¶ 55.) Of the five bridge-crossing options, only three were selected to be built, including the Longmeadow Project. (*Id.* ¶ 57.) A Record of Decision was issued in April 2002, approving the Environmental Impact Statement ("EIS") for the Longmeadow Project. (*Id.* ¶ 58.)

According to the EIS, the Longmeadow Project would have two, twelve-foot lanes in each direction separated by an eighteen-foot median and would be approximately 5.6 miles long. (*Id.* ¶ 60.) The EIS provided for two variation of the Longmeadow Project route. One variation crosses Brunner Farm, which is comprised of 751 acres along west bank of the Fox River and is the largest single landholding in the corridor. (*Id.* ¶ 62.) On October 1, 2008, the Kane County Forest Preserve District acquired the Brunner Farm. (*Id.* ¶ 87.) The Longmeadow Project would also run through Hickory Hills Park, which Dundee acquired in 1970 with federal funds dispersed through Land and Water Conservation Act. (*Id.* ¶ 64.) Hickory Hills Park contains a small baseball field, a small playground, and mature oak trees. (*Id.*) The park is adjacent to a local elementary school and would be separated from the school by the Longmeadow Project. (*Id.*) On June 21, 2000, Dundee and KDOT entered into an agreement to transfer a portion of Hickory Hills Park for highway use in exchange for land adjacent to the remaining park and land at the Brunner Farm. (*Id.* ¶ 65.)

Kane County was unable to secure funding for the Longmeadow Project and decided to examine the possibility of turning the Longmeadow Project into a tollway project. (*Id.* ¶ 73.) In October 2007, Kane County convened a task force to investigate the possibility of a tollway project. (*Id.* ¶ 74.) Kane County is finalizing funding options before selling bonds and building a tollway

project in the Longmeadow Project. (*Id.* ¶ 75.) In 2009, KDOT and IDOT completed a written re-evaluation of the 2002 EIS and submitted those documents to the Highway Administration. (*Id.* ¶ 77.) The Highway Administration determined that no supplemental EIS was necessary. (*Id.* ¶ 78.) During the preparation of the 2002 EIS and the analysis under the Department of Transportation Act, and at the time of the Record of Decision, the Brunner property was under private ownership. (*Id.* ¶ 85.) Kane County officials have approved contracts to begin Phase 1 of construction. In 2014, IDOT allocated almost $63 million for the construction of the Longmeadow Project. (*Id.* ¶ 94.)

While this law suit was pending, the Highway Administration, KDOT, and IDOT began a reevaluation to determine whether the Record of Decision remains valid and whether NEPA required them to issue a Supplemental EIS prior to approval of federal funding. (Dkt. 48-1, Fuller Decl. ¶¶ 3, 5-6.) A copy of the Reevaluation/Environmental Assessment the Longmeadow Project was made publicly available on July 29, 2016, a public hearing was held on August 30, 2016, and public comments were accepted until September 6, 2016. (*Id.* ¶ 7.) Plaintiff spoke at the public hearing and provided 676 pages of written comments. (*Id.* ¶ 8.) Other members of the public also spoke and provided written comments. (*Id.*) On November 22, 2016, the Highway Administration made a Finding of No Significant Impact and determined that a Supplemental Environmental Impact Statement was not required.[2]

**Legal Standard**

This Court will liberally construe Petzel's *pro se* pleadings. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807 (7th Cir. 2017). When a party moves to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the district court must accept all well-pleaded facts within the

---

[2] These findings preceded the addition of the Rusty Patched Bumble Bee to the endangered species list, triggering a new EIS to evaluate the impact of the Longmeadow Project on the bee's habitat.

complaint as true but may also consider evidence outside of the pleadings to ensure jurisdiction is proper. *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)).

A defendant may move to dismiss due to insufficient service of process. Fed. R. Civ. P. 12(b)(5). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citing *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005)).

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

**Discussion**

*1. Counts I - III:*

In Count I of the Amended Complaint, Petzel alleges violations of NEPA and APA for failing to adequately assess and disclose environmental impacts in the EIS. Count II alleges violations of NEPA and APA for failing to rigorously examine reasonable alternatives. Defendants argue that Counts I and II are untimely because the six-year statute of limitations has expired.

In Counts I and II, Petzel appears to challenge the Final EIS and Record of Decision in 2002. However, Petzel effectively disclaims in his response to the defendants' motion to dismiss his allegations to the extent that they relate to the Record of Decision or EIS from 2002 or the Highway Administration's determination that supplemental EIS was not necessary in 2009. *See* Dkt. 60, Pl. Petzel's Resp. at 2, 5-6. Even if Petzel had not abandoned those claims, they would be barred by the statute of limitations because Petzel filed this suit on May 20, 2016, more than six years after the alleged agency actions. *See* 28 U.S.C. § 2401; *see also Vill. of Thornton v. U.S. Army Corps of Engineers*, 31 F. Supp. 2d 1060, 1062-63 (N.D. Ill. 1998) (applying the six-year time limit in § 2401(a) to APA claims) (citing *Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1286-87 (5th Cir. 1997); *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1494-95 (10th Cir. 1997)). Therefore, this Court dismisses Counts I and II as untimely.

Petzel alleges, in Count III, violations of NEPA and APA for the failure to supplement the EIS after substantial changes to the proposal an in light of new information. Petzel argues that the defendants were required to supplement the EIS in 2012 because it had been three years since the Highway Administration's 2009 Decision regarding an EIS. Federal regulations, however, do not require an EIS to be automatically updated every three years. Instead, the regulations require an EIS to be updated before seeking further approvals if more than three years have passed between the last EIS and major steps advancing the proposed action. 23 C.F.R. § 771.129(b). That is not the situation here. Further, to the extent that Petzel bases Count III on the 2009 Decision not to supplement the EIS, the claim is untimely for the reasons stated above. Therefore, this Court finds that Count III has not stated a claim.

6

*2. Count IV:*

Count IV alleges a violation of §4(f) of the U.S. Department of Transportation Act and the APA for improper use of public park land. Defendants argue that this claim is not ripe for review because there is no final agency action. For this Court to exercise jurisdiction there must be a final agency action for the Court to review. *See Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Engineers*, 335 F.3d 607, 614 (7th Cir. 2003) (citing 5 U.S.C. § 704; *Abbs v. Sullivan,* 963 F.2d 918, 925–26 (7th Cir.1992)). There are two requirements for an agency action to be final under the APA: (1) it must "mark the consummation of the agency's decision-making process" and not merely interlocutory or preliminary; and (2) the action must determine legal rights and obligations. *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997)).

On November 22, 2016, the Highway Administration concluded that a Supplemental EIS was not required in a Finding of No Significant Impact, which qualifies as a final agency action. However, Petzel filed the operative complaint on August 11, 2016, long before the November 2016 Highway Administration on a Supplemental EIS. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016) (citing Texas v. U.S., 523 U.S. 296 (1998)). A challenge to agency conduct is ripe "only if it is filed after the final agency action." *Id.* (citing 5 U.S.C. § 704). Further, "premature suits for review of agency decisions must be dismissed even when the passage of time supplies the item missing at the time of filing-here, an agency decision." *Pub. Citizen v. Nuclear Regulatory Comm'n*, 845 F.2d 1105, 1107 (D.C. Cir. 1988).

Petzel asserts that a January 7, 2016, letter in response to resident inquiries is a "final agency action". Petzel contends that the letter satisfies this requirement because it articulates that the

7

impacts to properties under § 4(f) would be *de minimis*; it determines a noise standards issue; and finds that the Brunner Family Forest Preserve is not eligible under the DOT Act because it was jointly developed by KDOT. This Court finds that the letter does not qualify as a final agency action for several reasons. First, Petzel is not challenging the pre-existing bike trail to which the *de minimis* determination applied. *See* (Dkt. 48-2) ("The recent determination of a *de minimis* 4(f) was for work on an existing bike trail on the east side of the river."). Next, the noise standards issue was an explanation that a new noise study was not needed because the regulations allowed for grandfathering projects such as this one. (Dkt. 60, Exh. 4, p. 1). Lastly, the statements that § 4(f) did not apply to the Brunner Family Forest Preserve, because it was jointly developed by KDOT, is KDOT's explanation of their own determination that §4(f) would not apply.[3] The letter also informed residents that a new re-evaluation was being developed to determine if the Record of Decision remained valid and if a Supplemental EIS was necessary. This Court therefore finds that the January 7, 2016, letter was not a final agency action reviewable by this Court. Accordingly, this Court dismisses Count IV without prejudice.

*3. Count V:*

In Count V, Petzel alleges a violation of §6(f) of the Land and Water Conservation Fund based on the National Park Service's November 7, 2013, decision approving the partial conversion of Hickory Hills Park. The Federal Defendants filed an additional motion to dismiss Count V on May 4, 2017, arguing that Count V is moot. In support of their motion, defendants assert that the National Park Service voluntarily rescinded that decision on January 31, 2017, and reaffirmed the

---

[3] The letter explains that Kane County and the Forest Preserve planned, designated, and reserved the right of way for the Longmeadow Project before Brunner Farm became the Brunner Family Forest Preserve. (Dkt. 60, Exh. 3 p. 1). Regulations provide that: "[w]hen a property is formally reserved for a future transportation facility before or at the same time a park, recreation area, or wildlife and waterfowl refuge is established and concurrent or joint planning or development of the transportation facility and the Section 4(f) resource occurs, then any resulting impacts of the transportation facility will not be considered a use . . . ." 23 C.F.R. § 774.11.

rescission on April 24, 2017. Defendants filed the letters as exhibits. *See* Dkt. 94, Ex. 1-2. Petzel has not responded to the contest the motion. Accordingly, this Court dismisses Count V as moot.

*4. State Defendants:*

In addition, to the inadequacies of the Complaint outlined above the State Defendants, Wayne Rosenthal, Director of IDNR, and Randall Blankenhorn, Secretary of IDOT, further argue that the Eleventh Amendment prohibits suits against the agencies, the Illinois Department of Natural Resources and the Illinois Department of Transportation. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("... in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Plaintiff asserts that he is only suing Rosenthal and Blankenhorn in their official capacities and asking for prospective injunctive relief, which is not prohibited by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 666-667 (1974) ("holding a federal court may award an injunction that governs the official's future conduct when a plaintiff sues a state official alleging a violation of federal law"). Thus, to the extent that Petzel is seeking injunctive relief, the Eleventh Amendment does not prohibit suit.

Even if Petzel's claims were timely and ripe, he fails to state a claim against Blankenhorn and Rosenthal. Petzel's allegations that State Defendants violated NEPA, the APA, or the DOT Act do not address any actions by Blankenhorn as Secretary of IDOT. Petzel merely alleges that IDOT has been a key actor in the planning, approval, and financing of the Longmeadow Project without any elaboration on Blankenhorn's role. Petzel does not even name IDNR or its Secretary Rosenthal in Counts I to IV, let alone provide sufficient facts to satisfy Rule 8(a). Count V, in which IDNR and Rosenthal appear to be implicated, is moot for the reason set forth above.

*5. KDOT and Dundee:*

Defendants KDOT and Dundee also move to dismiss the Complaint against them [44] pursuant to 12(b)(5), arguing that Petzel did not comply with the requirements for service under Federal Rule of Civil Procedure 4. Petzel contends that he served Dundee, KDOT, and Kane County's States Attorney Joseph McMahon by certified mail. However, service by certified mail does not satisfy rule 4(j). *See Dunmars v. City of Chicago*, 22 F. Supp. 2d 777, 781 (N.D. Ill. 1998).

Even if service by certified mail were sufficient, the certified mail receipts here show that the materials were not sent to the appropriate officer and do not indicate who accepted the deliveries. Service on a state, a municipal corporation, or other state-created government organization may be made by "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Illinois law, for a public, municipal, governmental, or quasi-municipal corporation "summons may be served by leaving a copy with the chairperson of the county board or county clerk in the case of a county, with the mayor or city clerk in the case of a city, with the president of the board of trustees or village clerk in the case of a village, with the supervisor or town clerk in the case of a town, and with the president or clerk or other officer corresponding thereto in the case of any other public, municipal, governmental or quasi-municipal corporation or body." 735 Ill. Comp. Stat. 5/2-211. Additionally, service on Joseph McMahon is not service on Kane County because as a State's Attorney he is an Illinois official. *Ingemunson v. Hedges*, 133 Ill.2d 364, 369 (1990) (holding State's Attorneys should "be classified as State, rather than county, officials."). Thus, Petzel did not properly serve KDOT and Dundee.

Additionally, Petzel has not provided proof of service to the Court as required by Rule 4(m). Fed. R. Civ. P. 4(m). Petzel argues KDOT and Dundee nevertheless had actual notice of the suit

because they filed appearances. However, "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent Wood Prod., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). "As long as defendants comply with the rules by raising their defenses in their first responsive pleading or consolidate their defenses in a pre-pleading motion under Fed.R.Civ.P. 12(b), they do not waive their Rule 12(b) defenses." *Swanson v. City of Hammond, Ind.*, 411 F. App'x 913, 915-16 (7th Cir. 2011); *see also In re Hijazi*, 589 F.3d 401, 413 (7th Cir. 2009). The motion to dismiss now before the Court is the first responsive pleading for both KDOT and Dundee.

KDOT further argues that it is a subdivision of Kane County and not a suable entity. In Illinois, a party to litigation must have a legal existence, either natural or artificial, in order to sue or be sued. *See Jackson v. Village of Rosemont*, 180 Ill.App.3d 932, 937-38 (Ill. App. Ct. 1988) (holding that the Rosemont Horizon was a building operated by the Village of Rosemont and not a legal entity subject to being sued). There is no statutory authority that a county department of transportation is a separate legal entity from the county itself. Therefore, Kane County Department of Transportation cannot separately be sued. *See Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) ("no statutory or case authority supporting a direct action against subdivisions of [Counties]"). Accordingly, this Court grants defendants KDOT and Dundee's Motion to Dismiss [44] pursuant to 12(b)(5) without prejudice.

*5. Forest Preserve:*

The Forest Preserve moves to dismiss the Complaint against it for the additional reasons that it has qualified immunity under the Illinois Local Governmental and Governmental employees Tort Immunity Act, 745 ILCS 10/1-101.1, and that the Complaint does not sufficiently allege a claim against the Forest Preserve. Petzel did not respond to the Forest Preserve's motion. A plaintiff

waives their arguments where they fail to develop arguments related to a discrete issue or fail responding to alleged deficiencies in a motion to dismiss. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

**Conclusion**

This Court grants the defendants' motions to dismiss [40, 43, 44, 47, 87] without prejudice. Plaintiff Petzel may file an amended complaint within thirty days of the entry of this Order. Any amended complaint must be based on final agency actions occurring within the six years preceding the complaint. Plaintiff must also name and properly serve each defendant. Based on the foregoing discussion, it appears that the only possible amendment is to Count IV, which this Court found unripe for review. Status hearing set for Friday, July 14, 2017, at 9:00 a.m. to stand.

IT IS SO ORDERED.

Date: July 6, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge