UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEOFFREY J. PETZEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16 cv 5435 |
| STOP LONGMEADOW, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KANE COUNTY DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff-Intervenor Stop Longmeadow filed an Amended Complaint against various federal, state, and county agencies and departments in connection with defendants' approval of the Longmeadow Parkway Bridge Corridor Project ("Project") in Kane County, Illinois. Plaintiff alleges that defendants violated certain environmental laws and procedures with the November 2, 2016, Finding ("Finding") and the underlying Reevaluation Environmental Assessment ("Reevaluation"), and United States Fish and Wildlife Service's ("FWS") concurrence that the Project will not adversely affect the endangered rusty patched bumble bee. Defendants move to dismiss in part pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for mootness and failure to state a claim [118].[1] For the reasons stated below, this Court grants the motion.

---

[1] Defendants initially argued that Stop Longmeadow lacked Article III standing to raise its claims but conceded the issue after Stop Longmeadow filed an affidavit clarifying its basis for standing. Accordingly, this Court does not address the issue of standing.

**Background**

The following facts from the Amended Complaint are taken as true for purposes of this ruling. Plaintiff-Intervenor, Stop Longmeadow, is an Illinois not-for-profit organized to protect and conserve the natural resources and the threatened and endangered species' habitats in Kane County, Illinois.[2] The Project is in Kane County and the Forest Preserve District is a primary landholder within Project corridor. Defendant United States Department of Transportation ("DOT") has participated in planning and approval of the Project. Transportation Secretary, Elaine L. Chao, is named as a defendant in her official capacity. Defendant Federal Highway Administration ("FHWA") is a division of the DOT and has participated in planning and approval of the Project. Walter C. "Butch" Waidelich, Jr., Acting Deputy Administrator of the FHWA, is named as a defendant in his official capacity. Defendant Catherine Batey, Illinois Division Administrator of the FHWA, is also named in her official capacity. Defendant FWS is an agency within the Department of the Interior.

The Project is a proposed highway currently under construction in phases through Kane County that began in the early 1990s. In June 1998, Congress adopted the "Transportation Equity Act for the 21st Century" that included $9,375,000 in funding to construct bridge crossings over the Fox River in Kane County, Illinois. A public hearing was held in July 1998 to discuss a draft Environmental Impact Study ("Impact Study"). The FHWA approved the Final Impact Study and Section 4(f) Evaluation was approved on November 1, 2001.[3] On May 13, 2002, the FHWA issued a

---

[2] The original plaintiff, Geoffrey Petzel, is a land preservation advocate in Kane County and a resident of Lake County, Illinois. This Court dismissed Petzel on July 6, 2017.

[3] Section 4(f) of the Transportation Act, 49 U.S.C. §303(a); 23 U.S.C. §138(a), establishes a national policy that "special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites." Such public lands should not be used for transportation unless there is no prudent or feasible alternative and the project includes all possible planning to minimize harm from the use. 49 U.S.C. §303(c).

Record of Decision. In June 2015, the Regional FHWA Administrator for Illinois determined that a Reevaluation was necessary. The FHWA approved the Reevaluation on July 26, 2016.

In September 2016, the FWS published a notice in the Federal Register of a proposal to classify the rusty patched bumble bee as "endangered." On November 22, 2016, the FHWA issued its finding that the changes to the project from 2002 to 2016 were of no significant impact and approved the Finding. On January 13, 2017, FHWA published a notice pursuant to 23 USC §139(1) in the Federal Register, stating that the Reevaluation and Finding constitute the Final Federal Agency Action on the Project.

On March 21, 2017, the FWS officially classified the rusty patched bumble bee as "endangered." Kane County Department of Transportation announced plans to begin construction on April 17, 2017, on land within the "action area" of the rusty patched bumble bee. A few days later fieldwork to assess the impact of the Project on the endangered bee began.

Stop Longmeadow filed a six-count Amended Complaint for Declaratory and Injunctive Relief. Count I alleges violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4332(2)(C), and the Administrative Procedures Act ("APA"). Count II alleges violations of Section 4(f) of the Department of Transportation Act and the APA. Count III alleges that the defendants failed to perform certain discretionary duties under the Endangered Species Act ("ESA"), 16 U.S.C. §1536(a)(4). Count IV alleges a violation of section 7 of the ESA. Count V alleges that FWS's Letter of Concurrence with the FHWA's determination that the Longmeadow Project "may affect, but is not likely to adversely affect" the rusty patched bumble bee was arbitrary, capricious and violates the ESA. Count VI alleges that defendants violated the ESA by relying on the FWS Concurrence Letter and arbitrarily and capriciously failing to ensure against jeopardizing the habitat of the rusty patched bumble bee.

Stop Longmeadow requests a judicial declaration that the defendants failed to comply with the consultation provision of Section 7 of the ESA and Section 4(f) of the Transportation Act and violated the NEPA and the APA in the process. Stop Longmeadow further seeks a declaration that the defendants authorized, funded and carried out the Project without completing a Section 7 consultation in violation of the ESA. Additionally, it requests injunctive relief prohibiting defendants from using the Impact Study, the Reevaluation, and the resulting Finding in subsequent proceedings until the defendants fully comply with Section 4(f).

**Legal Standard**

When a party moves to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the district court must accept all well-pleaded facts within the complaint as true but may also consider evidence outside of the pleadings to ensure jurisdiction is proper. *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)).

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

**Discussion**

*1. Counts I - II:*

Defendants move to dismiss the portions of Counts I and II challenging the 2001 Impact Study and the 2002 Record of Decision as untimely. The original plaintiff Petzel raised the same claims, which this Court found barred by the six-year statute of limitations. Dkt. 106, Memorandum Opinion and Order, July 6, 2017; *see also* 28 U.S.C. § 2401; *see also Vill. of Thornton v. U.S. Army Corps of Engineers*, 31 F. Supp. 2d 1060, 1062-63 (N.D. Ill. 1998) (applying the six-year time limit in § 2401(a) to APA claims) (citing *Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1286-87 (5th Cir. 1997); *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1494-95 (10th Cir. 1997)). Stop Longmeadow does not dispute that any claim challenging the 2001 Impact Study and the 2002 Record of Decision are untimely. Therefore, this Court dismisses those parts of Counts I and II.

*2. Count III and IV*

Defendants argue that Counts III and IV, alleging violations of Section 7 of the ESA, are moot because the FHWA has completed the required consultation. Defendants also argue that Count III is not reviewable under the APA.

Section 7 of the ESA, mandates a consultation process that requires each federal agency to ensure that any action authorized, funded, or carried out the agency is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of the endangered or threatened species' habitat. 16 U.S.C. § 1635(a)(2). "In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available." *Id.* If the agency finds that the proposed project "may affect" a listed species or critical habitat, consultation is required. 50 C.F.R. §402.14(a). The informal process of consultation

may include, as it did here, the preparation of a Biological Assessment. *Id.* at §§402.13(a), 402.14(b)(1). "If during informal consultation it is determined by the Federal agency, with the written concurrence of the Service, that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary." 50 C.F.R. § 402.13(a).

In Count III, Stop Longmeadow asserts that defendants' conclusion that the Project would not jeopardize the bee's habitat was unreasonable, arbitrary, capricious, and an abuse of discretion under the APA. Stop Longmeadow contends that defendants failed to fully consider the impact of the Project on the bee through a complete consultation process. In Count IV, Stop Longmeadow asserts the defendants violated Section 7 of the ESA by failing to initiate and complete a consultation with FWS to ensure that any action authorized, funded, or carried out by the agency is not likely to jeopardize the continued existence of any endangered species. Defendants argue that the completion of the Section 7 consultation with FWS in April 2017 renders each of these counts moot. This Court agrees.

The appropriate remedy for an agency's failure to complete the Section 7 consultation would be to declare the agency had failed to do so and enjoin them from taking further action until the consultation was complete. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64-65 (2004) (discussing the limits of the courts power to compel agency action); *see also All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014) ("*Alliance*") (finding claims moot where the agency had reinitiated the consultation process, which was the relief sought by the plaintiff). Stop Longmeadow is seeking an injunction requiring the defendants to comply with Section 7; in other words, complete the consultation process. Stop Longmeadow also requests that this Court mandate that defendants complete a "formal consultation" and set aside the Reevaluation and the Finding.

However, the Reevaluation and the Finding were not part of the agency analysis of the Project's impact on the bee. For Stop Longmeadow to challenge the substantive conclusions of the Finding or the Biological Assessment, it would have to file a 60-day Notice of Intent before filing suit as this Court will address below. Moreover, a formal consultation is only required if the agency finds that the proposed action *is likely* to adversely affect a listed species. 50 C.F.R. §§402.13(a), 402.14(a)-(b); *see also Tex. Indep. Producers & Royalty Owners' Ass'n*, 410 F.3d 964, 979 (7th Cir. 2005) (finding the agency had complied with Section 7 when it found the proposed action was not likely to adversely affect the species and the FWS and National Marine Fisheries Service agreed after informal consultation). The FHWA completed an informal consultation and the FWS issued a letter concurring that the Project was not likely to adversely affect the bee, which is the only process required under Section 7 of the ESA and, thus, the claims in Counts III and IV are moot.

This Court must also dismiss Count III for failure to state a claim. First, Stop Longmeadow asserts 16 U.S.C. §1536(a)(4) as the basis for the claim. That provision of the ESA only applies to "agency action which is likely to jeopardize the continued existence of any species *proposed to be listed* under section 1533 of this title." 16 U.S.C. § 1536(a)(4). The rusty patched bumble bee *is listed* as an endangered species. That provision therefore does not apply.

Second, Count III is not reviewable under the APA. The APA allows the court to compel agency action that is unlawfully withheld or unreasonably denied. 5 U.S.C. § 706(1). However, that provision only applies to non-discretionary agency actions. *See Norton*, 542 U.S. at 64 ("§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'"). The Complaint alleges that Stop Longmeadow is challenging defendants' "failure to perform certain discretionary duties under the

ESA[ ]" through the APA. Dkt. 115, Amend. Compl. at ¶47. Thus, the express allegations of the complaint place this claim as alleged beyond the reach of the APA.

Count III is also not reviewable under the APA's other provisions because there is another adequate remedy available under the citizen-suit provision of the ESA, as alleged in Count IV. In *Bowen v. Massachusetts*, the Supreme Court interpreted § 704 as precluding APA review where Congress has otherwise provided a "special and adequate review procedure." 487 U.S. 879, 904, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). "[W]here a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded because 'Congress did not intend to permit a litigant challenging an administrative denial ... to utilize simultaneously both [the review provision] and the APA.'" *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (quoting *Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1501 (D.C. Cir. 1990)). Here, the claims in Counts III and IV are substantially the same; that the defendants failed to adequately assess the impact of the Project on the bee by failing to complete Section 7 consultation under the ESA. Count III posits the claim through the APA and Count IV raises the claim directly through the ESA citizens-suit provision. Accordingly, this Court finds the Count III is not reviewable under the APA.

*3. Counts III, IV, VI*

Defendants also move to dismiss Counts III, IV, and VI for failure to comply with the 60-day Notice of Intent to sue requirement. The ESA permits citizen suits to enjoin persons who are "alleged to be in violation" of the ESA or the applicable regulations. 16 U.S.C. § 1540(g)(1)(A). "A plaintiff who seeks to pursue a citizen suit must comply with a 60–day notice requirement that puts the agencies on notice of a perceived violation of the statute and an intent to sue." *Alliance*, 772 F.3d 592, 601. The notice requirement gives agencies the opportunity to review their actions and take any

corrective measures before engaging in an adversarial process. *Id.* The 60-day notice requirement is a

"mandatory condition precedent" to filing a lawsuit under the ESA. *Hallstrom v. Tillamook Cnty.,* 493

U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Failure to strictly comply with the notice

requirement acts as an absolute jurisdictional bar to suing under the ESA. *Sw. Ctr. for Biological*

*Diversity v. U.S. Bureau of Reclamation,* 143 F.3d 515, 520 (9th Cir. 1998).

Here, Stop Longmeadow filed its original intervenor complaint on April 24, 2017. (Dkt. 78).

The Notice of Intent to Sue for violations of Section 7 of the ESA was sent on April 27, 2017. (Dkt.

115, Ex. 3). Defendants therefore assert that Stop Longmeadow's ESA claims are barred by the

failure to comply with the 60-day notice requirement. Stop Longmeadow argues that it complied

with the 60-day requirement by not filing the amended complaint, which raises a claim under the

citizen suit provision of the ESA for failing to complete a Section 7 consultation, until September

14, 2017. In support of its position, Stop Longmeadow relies on *Alliance for the Wild Rockies.* In that

case however the Ninth Circuit Court of Appeals specifically distinguished the situation here from

the case at issue in *Alliance. See* 772 F.3d at 604 n.7. The Ninth Circuit reasoned that the 60-day

notice requirement only applies to citizen suits under the ESA, stating "there is nothing in the ESA

that remotely suggests that a potential ESA plaintiff must refrain from commencing suit to pursue

other non-ESA claims before the 60-day period expires," and found that Alliance met the notice

requirement by amending its complaint to add the ESA claims after the 60-day period expired. *Id.* at

604.[4] Alliance's original complaint alleged only violations of the National Environmental Policy Act

of 1969 and the National Forest Management Act of 1976. The Ninth Circuit distinguished, *Proie v.*

*National Marine Fisheries Service,* No. C11-5955BHS, 2012 WL 1536756, at *4 (W.D. Wash. May 1,

2012), in which the plaintiffs gave notice of their intent to sue under the ESA but, 21 days later, filed

---

[4] The Seventh Circuit has not addressed this issue.

a complaint alleging claims under the APA seeking judicial review of a purported ESA violation. *Alliance*, 772 F.3d at 604 n.7. The court in *Proie* found the notice requirement had not been met. *Id.*

Here, Stop Longmeadow's original complaint, filed on April 24, 2017, alleged in Count III challenges through the APA the defendants' failure to comply with obligations under Section 7 of the ESA. (Dkt. 78 at ¶¶46-57). As in *Proie*, Stop Longmeadow filed its original complaint prior to the notice of intent letter and later amended to add the ESA citizen suit count. Because both the APA and the ESA claims arose from the same alleged ESA violation, Stop Longmeadow has failed to comply with the notice requirement. Counts III and IV are thus barred.

With respect to Count VI, Stop Longmeadow concedes that the allegations challenging the quality of the data used in the Biological Assessment and the FWS concurrence were not expressly included in the notice letter. However, Stop Longmeadow argues that the letter was sufficient to put defendants on notice of the claim because the Biological Assessment and the FWS concurrence were among the listed deficiencies even though the exact violation as alleged in the complaint is not asserted in the letter. This Court is unpersuaded. The notice of intent to sue letter asserts that the defendants completely failed to conduct a Biological Assessment for the rusty patched bee. This is a different substantive claim than in Count VI, where Stop Longmeadow acknowledges the Biological Assessment was done, but challenges the data used. Accordingly, those portions of Count VI that fall outside the allegations raised in the notice of intent letter do not comply with the 60-day notice requirement.

**Conclusion**

Based on the foregoing, this Court grants defendants' partial motion to dismiss the amended complaint [118]. Thus, the portions of Counts I and II pertaining to the Impact Study and the

Record of Decision are dismissed as are Counts III, IV, and the portions of Count VI that challenge the data used in the Biological Assessment. Only Count V remains in its entirety.

IT IS SO ORDERED.

Date: 8/7/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge